[Civ. No. 1065. Fifth Dist. May 5, 1969.]

TONY SPINELLI, Plaintiff, Cross-defendant and Appellant, v. ORRIAN C. TALLCOTT, Defendant, Cross-complainant and Respondent.

George G. Murry for Plaintiff, Cross-defendant and Appellant.

Eugene A. Mash for Defendant, Cross-complainant and Respondent.

CONLEY, P. J.—In this case, Tony Spinelli, owner of 154 acres of Merced County farm land, sued Orrian Tallcott, the lessee under a three-year lease, for the balance of the specified consideration for occupany of the land in the year 1967. The court awarded to plaintiff the full balance of money claimed by him as rental, but countered it by awarding to the cross-complainant lessee two substantial offsets, which reduced the

net sum for which judgment was given to the plaintiff. ■ The appellant complains that no such offsets should have been allowed; this is the sole ground of the appeal.

Appellant asserts that during 1967 respondent owed rent in the sum of $5,390 of which only $813.89 was paid; consequently, on October 3, 1967, appellant filed a complaint in which he prayed for judgment in the sum of $4,576.11. Respondent alleged as a defense: that, while the lease commenced on February 1, 1966, appellant told respondent in November of 1966 that he intended to have a considerable portion of the premises leveled and that the respondent would not have to pay rental for the period of time during which the land would thus be unavailable for farming; in February of 1967, the appellant finally told respondent that, after all, he did not intend to level the ground, and by that time it was too late for respondent to plant the first 1967 annual crop on approximately 90 acres of the leased premises. In December of 1966, the landlord had told the renter that he was delaying the leveling and that the lessee should remove interior fences, and do certain other work prior to the leveling, that the respondent proceeded to do the directly or impliedly requested work on the land, such as removing the fences and ripping the ground. Tallcott testified that Spinelli indicated that he would "sign up" at the Soil Conservation office to receive payment from the United States for subsoiling the land. The total reasonable value of the extra work done on the place by the lessee in his opinion amounted to $2,443.

In March of 1967, the owner also requested that the respondent permit him to put a pipeline on part of the property. Although it was represented this would take only a few days, respondent testified that the pipeline was not complete even in June and that, consequently, he lost a barley crop on 40 acres.

In answer to appellant's complaint for the unpaid rental agreed to in the lease for 1967 ($4,576.11), respondent answered and cross-complained alleging as offsets four items:

No. I: Interference by lessor with his possession of 90 acres of the leased land during the latter part of 1966 and the first part of 1967, resulting in damages of $3,330;

No. II: Reliance on representations made to him by appellant that the owner would level the 90 acres, and that his not planting crops because of the reliance brought damage in the sum of $3,330; it is conceded that this is a separately pleaded claim of the amount asked for in No. I above;

No. III: A second interference with his possession of 40 acres, because of delay in installing a pipeline, creating damage in the sum of $2,200; and

No. IV: The owner owed for work and labor performed by the defendant at plaintiff's special instance and request in the sum of $3,543.50.

The trial court granted judgment to appellant in the full amount of the unpaid rent, $4,576.11, and judgment on the cross-complaint in favor of the respondent on item I for $3,330, and on item IV for $1,000; no separate judgment was granted the lessee on item II, and the judgment was for the cross-defendant owner on item III.

Appellant contends that there are two questions involved in this appeal which should be answered in his favor:

1) Did respondent produce sufficient evidence to prove the amount of damages awarded to him on the cross-complaint for appellant's alleged interference with his possession of 90 acres?

2) Did respondent's testimony completely rebut the implied promise imposed on appellant requiring offsetting damages for work and services performed by respondent on the owner's property?

1) The renter planted a crop of silage upon the 90 acres in June 1967. Tallcott contended he intended to plant oats for hay as the first annual crop in 1967 until the owner said he planned to level a great part of the land, and that when the renter finally found out that Spinelli did not intend to carry on leveling operations on the land it was so late he could not plant the oats, and, consequently, lost that intended crop.

The evidence in support of the damages of $3,330 is as follows:

"Q. Was there still time to plant a crop on that 90 acres?

"A. No.

"Q. It was too late to do that? A. That's right.

"Q. Is that the first—that was the last word you got from him then that he was not going to do any leveling, is that it? A. That's right.

"Q. When did you plant a crop on the 90 acres then?

"A. In June.

"Q. In June. Now, can you tell the court what you would have made on that crop if you had planted 90 acres in oats?

"A. Well, the way I figured it out if you hired it all done from a commercial—someone who worked ground and harvested I should have made about $3300 but I have got my own

machinery and that would have knocked me out of all my equipment use and I really believe that it should have been closer to 4900.

"Q. In other words if you had done all the work yourself you would have netted about 4900? A. That's right.

"Q. But if you had hired the work done you would have netted around 3300, is that correct? A. That's right.

"Q. That would be for 90 acres of oats, is that correct?

"A. That's right."

Appellant argues that the evidence quoted is not the proper method of proving damages from the loss of a crop. We concede that the proper method is to show what the crop would have been and to deduct the probable cost of producing and selling such crop with the difference between market value and costs constituting the amount of damages. We have so held in *Hayman* v. *Shoemake*, 203 Cal.App.2d 140 [21 Cal. Rptr. 519], and *Shoemake* v. *F. H. Woodruff & Son, Inc.*, 227 Cal.App.2d 587 [38 Cal.Rptr. 817]. The rule is clearly set forth also in other California cases and authorities: *Morris* v. *George*, 57 Cal.App.2d 665, 683-684 [135 P.2d 195]; *Shimbori* v. *Coelho*, 18 Cal.App.2d 641, 646 [64 P.2d 479]; *Dutra* v. *Cabral*, 80 Cal.App.2d 114 [181 P.2d 26]; *Wendt* v. *Smith*, 50 Cal.App. 233 [194 P. 736]; *Wells* v. *B. F. Porter Estate*, 205 Cal. 776 [272 P. 1039]; *Teller* v. *Bay & River Dredging Co.*, 151 Cal. 209 [90 P. 942]; 30 Cal.Jur.2d, Landlord and Tenant, § 317, p. 462.

However, counsel for appellant overlooks the fact that he did not make any objection to this evidence in the trial court and that, as a consequence, the testimony of the cross-complainant relative to damages was properly considered by the trial judge in reaching his conclusion as to the propriety of the judgment.

In *Powers* v. *Board of Public Works*, 216 Cal. 546, 552 [15 P.2d 156], it is said: ". . . [I]t is the settled rule that incompetent evidence admitted without objection is sufficient to support a finding."

In discussing a contention similar to that made by the appellant in this case relative to the sufficiency of "technically incompetent evidence admitted without objection," the Supreme Court in *Parsons* v. *Easton*, 184 Cal. 764, 769 [195 P. 419], stated: "Although this evidence was technically incompetent, it was admitted without objection. It must, therefore, be given as much weight in this court, in reviewing the question of the sufficiency of the evidence, as if it were competent."

*Estate of Fraysher,* 47 Cal.2d 131, 135 [301 P.2d 848], and *Soares* v. *Ghisletta,* 1 Cal.App.2d 402, 404-405 [36 P.2d 668], both point out that an objection to such evidence cannot be urged for the first time at the appellate level. (See also *Lucy* v. *Davis,* 163 Cal. 611, 615 [126 P. 490]; *Estate of Kay,* 30 Cal.2d 215, 224 [181 P.2d 1]; *Yule* v. *Miller,* 80 Cal.App. 609 [252 P. 733]; *Mercantile Trust Co.* v. *Sunset etc. Co.,* 176 Cal. 461, 466 [168 P. 1037]; *Smith* v. *Busniewski,* 115 Cal.App.2d 124, 129 [251 P.2d 697]; *San Francisco etc. School Dist.* v. *Board of Nat. Missions,* 129 Cal.App.2d 236, 238 [276 P.2d 829]; *Berry* v. *Chrome Crankshaft Co.,* 159 Cal.App.2d 549, 552 [324 P.2d 70]; *Estate of Ballard,* 210 Cal.App.2d 799, 802 [26 Cal.Rptr. 832]; 19 Cal.Jur.2d, Evidence, § 378, p. 108 and § 389, p. 123.)

It is clear, therefore, that the trial judge had a right to consider the testimony of the defendant which was received without objection. The defendant had engaged in farming for 20 years and showed in other parts of his testimony that he was well acquainted with the fact that, in order to derive net profits from an agricultural undertaking, it was necessary to show what crop would have been raised and to deduct from the reasonable market value of such crop the cost of bringing it to fruition and engaging in its sale. The defendant was subject to cross-examination on the details of his calculations concerning his loss of profits by reason of being prevented from raising a crop of oats on the 90 acres involved. That the trial court had in mind the correct rule with respect to damages is shown by its findings. We do not have a right, in the circumstances, to reduce the $3,330 allowed by the trial court as an offset for the loss of the crop on the 90 acres of the leased ranch.

2) As his second and concluding point on appeal, the plaintiff claims that the award of $1,000 as an offset pursuant to the fourth numbered defense hereinabove referred to was not properly proven. This contention is equally fallacious. The recovery is on several implied contracts for work done by Mr. Tallcott on the Spinelli ranch at the direct or inferential request of the owner.

As stated in section 1621 of the Civil Code: "An implied contract is one, the existence and terms of which are manifested by conduct."

The lessee performed work on the leased property in preparation for the installation of a pipeline, the removal of inte-

rior fences and in subsoiling the land. Mr. Tallcott testified concerning the detail of the work done by him in that:

1) He had to pull dirt out of a ditch through the use of proper implements of which the reasonable value was $400;

2) He performed leveling after that in the same amount;

3) He pulled posts with his John Deere tractor at a reasonable value of $195;

4) He removed fences by work of a reasonable value of $148.50; and

5) He performed tractor work at $20 an hour for taking out fences, amounting to $400.

He further testified:

"A. I subsoiled the farm, the ranch, and Mr. Spinelli was supposed to sign up with the Soil Conservation on it and I don't know that he did. I never received any for that.

"Q. Let me ask you this. Now, other than the removal of the fences which you mentioned that Mr. Spinelli complained to you about did you ever have any discussion with him about any other of these items?

"A. Such as which?

"Q. Before you did the work did you have any discussion with Mr. Spinelli about your doing any of this work before you actually did it? A. Well, on the ripping he said that it hadn't been ripped and that it needed it.

"Q. And did he say he would pay you for ripping it?

"A. He would sign up at the Soil Conservation.

"Q. I see. A. It was money from the government, not from him.

"Q. I see. And you didn't know whether he actually signed up or not? A. No.

"Q. But it was $900.00 as far as you were concerned for the work you did in ripping, is that correct?

"A. That's right."

"Q. Now, you mentioned earlier about the removing the fences so they could level and there are several items here for removal of fences. One is the $400 we have just discussed and another is the $148.50 which apparently was some manual labor. Was that all for removal of the fences after he made that comment to you about getting the fences out?

"A. Yes.

"Q. Did he state that he was going to pay you for that work?

"A. No, he didn't say that he would but I am not on a share crop basis. It is a permanent improvement for his place and I wouldn't see why he wouldn't."

As discussed in volume 1 of Restatement of the Law of Contracts, section 21, pocket supplement, containing California annotations, entitled "Acts as manifestation of assent," on page Cal-11: "Where, without express contract, one performs services for another with that other's knowledge, the services being of a character usually charged for, and the other person does not dissent but benefits by the services, a promise to pay the reasonable value of such services is implied." (See also *Mayborne* v. *Citizens' Trust & Sav. Bank,* 46 Cal.App. 178 [188 P. 1034]; *Semi-Tropic Spiritualists' Assn.* v. *Johnson,* 163 Cal. 639 [126 P. 488]; *Toomy* v. *Dunphy,* 86 Cal. 639 [25 P. 130]; *Pixley* v. *Western Pac. R.R. Co.,* 33 Cal. 183; *Keene* v. *Keene,* 57 Cal.2d 657, 664 [21 Cal.Rptr. 593, 371 P.2d 329], including footnote 4 (citing cases) on the same page.) In our view, the trial court had ample evidence from which to conclude that the cross-complainant earned $1,000 from his work for the plaintiff.

We conclude that the setoffs allowed by the trial court were amply justified and that the judgment is correct.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.