[No. D040034. Fourth Dist., Div. One. Sept. 5, 2003.]

CALIFORNIA EMERGENCY PHYSICIANS MEDICAL GROUP, Plaintiff and Appellant, v.
PACIFICARE OF CALIFORNIA et al., Defendants and Respondents.

1128

**COUNSEL**

Schley Look & Guthrie and Ian M. Guthrie for Plaintiff and Appellant.

Catherine I. Hanson for California Medical Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Konowiecki & Rank, Peter Roan and Tom Knego for Defendants and Respondents.

**OPINION**

**O'ROURKE, J.**—California Emergency Physicians Medical Group (Emergency Physicians) provided emergency medical services for patients who had contracted for medical insurance with PacifiCare of California and PacifiCare of California doing business as Secure Horizons (collectively PacifiCare) and who chose Family Health Network (FHN) as their medical provider. FHN failed to pay Emergency Physicians for the emergency medical services it provided. Emergency Physicians sued PacifiCare to recover the value of those services.

The court sustained PacifiCare's demurrer without leave to amend. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

According to the allegations in the complaint, Emergency Physicians is a professional corporation that provides emergency medical services at Alvarado Hospital Medical Center. PacifiCare is a health care service plan licensed by the State of California under the Knox-Keene Health Care Services Plan Act (Knox-Keene Act) (Health & Saf. Code, § 1340 et seq.).[1] PacifiCare contracted with FHN to provide health care services, including emergency medical services, to PacifiCare members who chose FHN as their medical provider.

FHN filed for bankruptcy and went out of business owing Emergency Physicians over $100,000. Although Emergency Physicians submitted requests to PacifiCare for payment of those claims, PacifiCare did not pay them, nor did it pay interest and penalties owed due to the late payment of some of Emergency Physicians' claims.

Emergency Physicians sued PacifiCare, alleging causes of action for violations of sections 1371, 1371.35 and 1371.4, common counts for services rendered, quantum meruit, negligence, breach of contract as third party beneficiary, and unfair business practices. The court sustained PacifiCare's demurrer without leave to amend, holding that health care service plans that enter into risk-sharing agreements with medical providers are not obligated to pay emergency service providers.

## DISCUSSION

### I. *Standard of Review on Demurrer*

We review an order sustaining a demurrer without leave to amend under well-established rules: " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

---

[1] All further statutory references are to the Health and Safety Code unless otherwise specified.

## II. *Section 1371.4*

Emergency Physicians contends section 1371.4 of the Knox-Keene Act requires PacifiCare to pay its claims in the event that a contracting medical provider fails to pay. Section 1371.4 provides in part: "(b) A health care service plan *shall reimburse* providers for emergency services and care provided to its enrollees, until the care results in stabilization of the enrollee, except as provided in subdivision (c). As long as federal or state law requires that emergency services and care be provided without first questioning the patient's ability to pay, a health care service plan shall not require a provider to obtain authorization prior to the provision of emergency services and care necessary to stabilize the enrollee's emergency medical condition.

"(c) Payment for emergency services and care may be denied only if the health care service plan reasonably determines that the emergency services and care were never performed; provided that a health care service plan may deny reimbursement to a provider for a medical screening examination in cases when the plan enrollee did not require emergency services and care and the enrollee reasonably should have known that an emergency did not exist … [¶] … [¶]

"(e) A health care service plan may *delegate* the responsibilities enumerated in this section to the plan's contracting medical providers." (Italics added.)

We review de novo the construction of a statute because it presents a pure question of law. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) "The primary duty of a court when interpreting a statute is to give effect to the intent of the Legislature, so as to effectuate the purpose of the law. [Citation.] To determine intent, courts turn first to the words themselves, giving them their ordinary and generally accepted meaning. [Citation.] If the language permits more than one reasonable interpretation, the court then looks to extrinsic aids, such as the object to be achieved and the evil to be remedied by the statute, the legislative history, public policy, and the statutory scheme of which the statute is a part. [Citation.] … Ultimately, the court must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and it must avoid an interpretation leading to absurd consequences." (*In re Luke* (2001) 88 Cal.App.4th 650, 655 [105 Cal.Rptr.2d 905].)

We agree with Emergency Physicians and amicus curiae California Medical Association that health care service plans have a mandatory duty to pay for emergency medical services under section 1371.4, subdivision (b). Subdivision (e), however, allows health care service plans to delegate that responsibility. Emergency Physicians contends that although health care

service plans may delegate their section 1371.4 responsibilities to contracting medical providers, they remain liable if the contracting medical providers fail to pay. PacifiCare contends it does not remain liable.

The term "delegate" has a specific meaning for licensees like health care service plans, which is expressed in the context of the "well-established rule of *nondelegable* dut[y] of licensees." (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295 [65 Cal.Rptr.2d 872, 940 P.2d 323], italics added.) Under that rule, a licensee remains liable for the acts of its agents and employees. (*Ibid.*) "The rule of nondelegable duties for licensees is of common law derivation. [Citations.] The essential justification for this rule is one of ensuring accountability of licensees so as to safeguard the public welfare." (*Id.* at p. 296.) Because a licensee like PacifiCare remains liable for a *nondelegable* duty, when the Legislature used the term "delegate" in subdivision (e), it must have intended that the obligations of section 1371.4 are *delegable* duties; that is, duties for which the health care service plan does not retain liability. " ' "A statute will be construed in light of common law decisions, unless its language ' "clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter ...." [Citations.]' [Citation.]" ' " (16 Cal.4th at p. 297.) ▉ In this case, by using the term "delegate," the Legislature clearly and unequivocally disclosed an intention to depart from the common law rule that licensees are liable for the acts of their agents.

This construction is consistent with the legislative history of section 1371.4. Subdivision (e) appears in the original version of section 1371.4 and was added along with other amendments to reduce the opposition of several large HMO's. (Sen. Marian Bergeson, mem. to members of Leg., Aug. 29, 1994.) More importantly, the Legislature passed an amendment to section 1371.4 that required health care service plans to pay emergency service providers if a contracting medical provider fails to pay.[2] (Sen. Bill No. 117 (2001–2002 Reg. Sess.) § 2(f).) The Governor vetoed this amendment, stating in part: "SB 117 would adversely affect HMO patient care by ... prohibiting delegated risk arrangements between HMOs and physician groups based upon the type of service." (Governor's veto message to Sen. on Sen. Bill No. 117 (Oct. 10, 2001) 3 Sen. J. (2001–2002 Reg. Sess.) pp. 3082–3083.)

---

[2] The amendment stated: "If a medical group or independent practice association has accepted the responsibility for payment of emergency services and care and fails to comply with the payment requirements of sections 1371, 1371.35, and 1371.37, the provider may submit the complete claim to the health care service plan. The health care service plan shall pay the complete claim on a fee-for-service basis within 45 days of the provider's submission of the completed claim to the plan ...."

"The Legislature's adoption of subsequent, amending legislation that is ultimately vetoed may be considered as evidence of the Legislature's understanding of the unamended, existing statute." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 832 [25 Cal.Rptr.2d 148, 863 P.2d 218].) The 2001 legislation reflects the Legislature's understanding that under section 1371.4 subdivision (e), health care service plans that delegate their responsibilities under section 1371.4 to contracting medical providers are not responsible to pay emergency services providers when the contracting medical providers fail to pay.

Emergency Physicians' interpretation of section 1371.4 subdivision (e) relies on contract law principles, under which a party that transfers an obligation remains liable unless the party entitled to the benefit of the obligation consents to the transfer. (Civ. Code, §§ 1428, 1457.) We reject that interpretation because it renders subdivision (e) nugatory and " '[a]n interpretation that renders related provisions nugatory must be avoided ....' " (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659 [25 Cal.Rptr.2d 109, 863 P.2d 179].)

### III. *Unfair Competition*

Unfair competition includes "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech*).)

Although the unfair competition law is broadly written to permit courts to restrain dishonest or unfair business dealings, the scope of the law is not unlimited. "Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." (*Cel-Tech, supra,* 20 Cal.4th at p.182.)

As discussed *ante*, Health and Safety Code section 1371.4, subdivision (e) specifically allows health care service plans to delegate to contracting medical providers the responsibility to pay emergency service providers. This provides a safe harbor for health care service plans. For that reason, Emergency Physicians cannot state a cause of action under Business and Professions Code section 17200.

## IV. *Implied Contract*

We begin by recognizing that Emergency Physicians may bring common law causes of action against PacifiCare. "The Knox-Keene Act itself contemplates that a health care plan may be held liable under theories based on other law. Section 1371.25 provides: 'A plan, any entity contracting with a plan, and providers are each responsible for their own acts or omissions, and are not liable for the acts or omissions of, or the costs of defending, others. Any provision to the contrary in a contract with providers is void and unenforceable. *Nothing in this section shall preclude a finding of liability on the part of a plan, any entity contracting with a plan, or a provider, based on the doctrines of equitable indemnity, comparative negligence, contribution, or other statutory or common law bases for liability.*' (Italics added.)" (*Coast Plaza Doctors Hospital v. UHP Healthcare* (2002) 105 Cal.App.4th 693, 706 [129 Cal.Rptr.2d 650].) ■ However, as a matter of common sense, section 1371.25 does not allow a common law cause of action that is contrary to a specific provision of the Knox-Keene Act.

Emergency Physicians contends that its common counts cause of action states a claim for implied contract, which it describes as follows: (1) PacifiCare had a duty to provide emergency medical services to its enrollees; (2) Emergency Physicians provided emergency medical services to PacifiCare's enrollees; and (3) PacifiCare knew Emergency Physicians performed these services.

An implied contract "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." (*Silva v. Providence Hospital of Oakland* (1939) 14 Cal.2d 762, 773 [97 P.2d 798]; Civ. Code, § 1621.) In order to plead a cause of action for implied contract, "the facts from which the promise is implied must be alleged." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 247 [74 Cal.Rptr. 398, 449 P.2d 462].) A course of conduct can show an implied promise. (*Varni Bros. Corp. v. Wine World, Inc.* (1995) 35 Cal.App.4th 880, 889 [41 Cal.Rptr.2d 740] [implied contract based upon appellant's distribution of wine for wine producer for many years]; *Youngman*, at p. 247 [implied contract based upon announced practice of wage increases].) Emergency Physicians alleged an express contract between PacifiCare and FHN in which FHN paid for emergency services. Emergency Physicians further alleged that PacifiCare refused to pay for these services. These allegations do not show a course of conduct under which PacifiCare paid Emergency Physicians for its services.

Emergency Physicians' reliance upon *Spinelli v. Tallcott* (1969) 272 Cal.App.2d 589 [77 Cal.Rptr. 481] is misplaced. *Spinelli* states: " 'Where, without express contract, one performs services for another with that other's knowledge, the services being of a character usually charged for, and the

other person does not dissent but benefits by the services, a promise to pay the reasonable value of such services is implied.' " (*Id.* at p. 595.) Although Emergency Physicians performed a service of a character usually charged for and PacifiCare knew but did not dissent from the performance, PacifiCare had delegated its duty to pay the reasonable value of the services to FHN. *Spinelli*, which involved only two parties, does not address this situation in which the party who benefited from the services legally delegated its obligation.

## V. *Negligence*

Emergency Physicians contends it stated a cause of action for negligence in that PacifiCare breached its duty "to use due care so as not to cause harm to [Emergency Physicians'] financial interest ...." We conclude there is no such duty.

" 'The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.] Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court. [Citation.]' [Citations.]

"Recognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule, in negligence law. Privity of contract is no longer necessary to recognition of a duty in the business context and public policy may dictate the existence of a duty to third parties.... [W]e reiterated '[t]he basic tests for determining the existence of such a duty ... set forth in *Biakanja v. Irving* [(1958)] 49 Cal.2d 647, 650 [320 P.2d 16] as follows: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." ' " (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 57–58 [77 Cal.Rptr.2d 709, 960 P.2d 513].)

In *Desert Healthcare Dist. v. PacifiCare FHP, Inc.* (2001) 94 Cal.App.4th 781 [114 Cal.Rptr.2d 623], the court rejected a hospital's contention that PacifiCare had a special duty to insure the financial stability of its contracting medical provider. (*Id.* at p. 791.) The court found that the hospital could not satisfy even the first *Biakanja* factor: "The conduct alleged to have been negligent must have been intended to affect that particular plaintiff, rather than just a class of persons to whom the plaintiff happens to belong.

[Citation.] The failure to show a particularized effect precludes a finding of a special relationship giving rise to a duty, because, to the extent the plaintiff was merely affected in the same way as other members of the plaintiff class, the case is nothing more than a traditional products liability or negligence case in which economic damages are not available. [Citation.] The most that Desert Healthcare can show is that PacifiCare's transaction with [the contracting medical provider] was intended to affect any hospitals that were unfortunate enough to contract with [the contracting medical provider], thus precluding a finding of duty." (*Id.* at p. 792.) Similarly, the most Emergency Physicians can show is that PacifiCare's contract with FHN was intended to affect any emergency services provider whom FHN had an obligation to pay.

Even assuming Emergency Physicians could satisfy some of the *Biakanja* factors, we would still find no duty as a matter of policy. The Legislature has approved risk-sharing plans, such as capitation, and has allowed health care service plans to delegate payment responsibility to contracting medical providers. Finding a duty in this situation is directly contrary to section 1371.4, subdivision (e) of the Knox-Keene Act.

### VI.   *Quantum Meruit*

Emergency Physicians contends it has stated a claim for quantum meruit, also referred to as restitution and quasi-contract, under various provisions of the Restatement of Restitution (Restatement). We disagree because allowing restitution would frustrate the public policy underlying the Knox-Keene Act.

Quantum meruit refers to an obligation created by the law without regard to the intention of the parties in "situations in which one person is accountable to another on the ground that otherwise he would unjustly benefit or the other would unjustly suffer loss." (Rest., Restitution, general scope note, p. 1.) " ' "The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. [¶] It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and *where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.*" ' " (*Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1315 [265 Cal.Rptr. 525], italics added; see also *First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1663 [15 Cal.Rptr.2d 173] ["Determining whether it is unjust for a person to retain a benefit may involve policy considerations."].)

■ We decline to grant Emergency Physicians restitution under the Restatement[3] because the Legislature has specified the payment obligations in this situation. By enacting section 1371.4, the Legislature recognized a health care service plan's duty to pay emergency service providers. The Legislature also weighed the competing interests of emergency service providers and health care service plans in cases where the health care service plan contracts with medical providers, deciding that health care service plans could delegate their payment obligation to those providers. Were we to grant restitution to Emergency Physicians, we would thwart the Legislature's determination that the benefits to the public of allowing health care service plans to delegate risk to contracting medical providers outweigh the cost to emergency service providers.

## VII. *Third Party Beneficiary*

Emergency Physicians alleges a breach of contract on a third party beneficiary theory. It claims the health care policies PacifiCare issued to its enrollees were "made in part for [Emergency Physicians's] benefit in that [PacifiCare] undertook to provide medical services to its enrollees and that included an express or implied agreement to pay [Emergency Physicians] for services rendered to enrollees of [PacifiCare's] plans."

"Civil Code section 1559 provides: 'A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.' A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that third party and such intent appears on the terms of the contract. [Citation.] However, it is well settled that Civil Code section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it. [Citations.] ' "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to

---

[3] Emergency Physicians relies upon section 76 of the Restatement, which provides: "[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payer is barred by the wrongful nature of his conduct." (Rest., Restitution, § 76.) Emergency Physicians also relies on the similar sections 113–115 of the Restatement, the most relevant of which provides: "[a] person who has performed the duty of another by supplying a third person with necessaries, although acting without the other's knowledge or consent, is entitled to restitution from the other therefor if [¶] (a) he acted unofficiously and with intent to charge therefor, and [¶] (b) the things or services supplied were immediately necessary to prevent serious bodily harm to or suffering by such person." (Rest., Restitution § 114.) Emergency Physicians mistakenly relies upon Restatement section 71, which is not applicable because PacifiCare did not threaten to sue Emergency Physicians and because Emergency Physicians did not pay a debt of PacifiCare.

benefit him ....'' ' [Citations.]'' (*Jones v. Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1724 [33 Cal.Rptr.2d 291].)

Third party beneficiary status is a matter of contract interpretation. (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 680 [101 Cal.Rptr.2d 127].) For that reason, the contract must be set out in the pleadings: "A plaintiff must plead a contract which was made expressly for his benefit and one in which it clearly appears that he was a beneficiary." (*Luis v. Orcutt Town Water Co.* (1962) 204 Cal.App.2d 433, 441 [22 Cal.Rptr. 389].) Emergency Physicians failed to set out the specific policy language on which it relies or to incorporate the standard PacifiCare health insurance policy by reference, but asks for leave to amend in order to conduct discovery to obtain PacifiCare insurance policies. At the unopposed request of PacifiCare, we took judicial notice of the health insurance policies PacifiCare issued to its enrollees under Evidence Code section 452, subdivision (h).

Under the terms of the policies, Emergency Physicians is not an intended beneficiary. The policies provide that contracting medical providers receive monthly payments, which cover the cost of care provided by the contracting medical providers and which may also cover the cost of referrals to specialists. Contracting hospitals receive either monthly payments, discounted fee for services, or fixed daily rates. Contracting medical providers are required to have stop-loss insurance protection. These policies do not show an intention to benefit noncontracting providers, who are not mentioned in the contract. For that reason, the court properly sustained PacifiCare's demurrer without leave to amend as to this cause of action.

## DISPOSITION

The judgment is affirmed. Each party is to bear its own costs on appeal.

Benke, Acting P. J., and Aaron, J., concurred.

A petition for a rehearing was denied September 25, 2004, and appellant's petition for review by the Supreme Court was denied December 17, 2003. Kennard, J., was of the opinion that the petition should be granted.