[No. B160624. Second Dist., Div. Six. Feb. 9, 2004.]

MELVIN A. OCHS, M.D., Plaintiff and Appellant, v.
PACIFICARE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Schley, Look & Guthrie and Ian M. Guthrie for Plaintiff and Appellant.

Catherine I. Hanson for California Medical Association as Amicus Curiae on behalf of Plaintiff and Appellant.

K & R Law Group and Peter M. Roan for Defendants and Respondents.

OPINION

**COFFEE, J.—** ██ Health and Safety Code section 1371.4[1] generally requires health care service plans to pay for emergency medical care rendered to their enrollees, regardless of whether the provider rendering the services has contracted with the plan. Subdivision (e) of that section provides, "A health care service plan may delegate the responsibilities enumerated in this section to the plan's contracting medical providers." Here we conclude that a health care service plan is not statutorily obligated to pay for emergency services when it has delegated its payment responsibilities to a contracting medical provider that becomes insolvent and is unable to pay. It may, however, be liable to pay for emergency services when it has acted negligently in delegating its payment responsibilities.

### FACTS AND PROCEDURAL HISTORY

According to allegations in its first amended complaint, plaintiff and appellant Melvin A. Ochs, M.D., Medical Corporation (Ochs), is a professional corporation that provides emergency room services at Scripps Memorial Hospital in Chula Vista, California. Defendants and respondents PacifiCare of California and PacifiCare of California dba Secure Horizons (collectively PacifiCare) are health care service plans licensed by the State of California under the Knox-Keene Health Care Services Plan Act (Knox-Keene Act) (§ 1340 et seq.).

Health care service plans such as PacifiCare do not actually provide medical services and generally contract for such services with intermediaries such as medical groups and independent practice associations. PacifiCare

---

[1] All statutory references are to the Health and Safety Code unless otherwise stated.

contracted with the independent practice association Family Health Network (FHN) to provide health care services to its enrollees who chose FHN as their medical provider. Some of these enrollees live in the vicinity of Scripps Memorial Hospital and rely upon Ochs for emergency services. Ochs does not have a contract with either PacifiCare or FHN to provide medical care to their enrollees, but emergency care providers are required by both state and federal law to provide emergency services without regard for a patient's ability to pay. (§ 1317; 42 U.S.C. § 1395dd.)

The contract between PacifiCare and FHN purports to delegate PacifiCare's responsibility for providing medical services to FHN. Ochs provided emergency services to PacifiCare enrollees covered by FHN and submitted the bills for those services to FHN, but FHN has declared bankruptcy and is unable to pay those bills. Ochs sought payment from PacifiCare directly, which has declined to pay the bills on the ground that it is not financially responsible for services delegated to FHN.

Ochs filed suit against PacifiCare, alleging causes of action for statutory violations of the Knox-Keene Act, unfair business practices, negligence, declaratory and injunctive relief regarding PacifiCare's continuing obligation to pay for emergency services provided to PacifiCare/FHN enrollees, common counts for services rendered, quantum meruit, breach of contract as a third party beneficiary, and declaratory relief regarding Ochs's right to directly bill patients. PacifiCare filed a demurrer to Ochs's first amended complaint, arguing that it had delegated its responsibilities to FHN and was not obligated to pay for noncontract emergency services provided to enrollees who had selected FHN as their medical care provider. The trial court agreed, sustained the demurrer without leave to amend, and entered a final judgment of dismissal. Ochs appeals.

## DISCUSSION

### Order Sustaining Demurrer

When reviewing an order sustaining a demurrer, we review the trial court's ruling de novo, exercising our independent judgment to determine whether the complaint states a cause of action under any legal theory. (*Trader Sports Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43–44 [112 Cal.Rptr.2d 677].) We accept as true the properly pleaded allegations of facts in the complaint, but not the contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

### 1. *Statutory Violations of Knox-Keene Act*

Section 1371.4 is the portion of the Knox-Keene Act governing compensation for emergency care services. Subdivision (b) of that statute requires health care service plans to pay for emergency care rendered to their enrollees regardless of whether the emergency care provider is under contract with the plan: "A health care service plan shall reimburse providers for emergency services and care provided to its enrollees, until the care results in the stabilization of the enrollee . . . . As long as federal or state law requires that emergency services and care be provided without first questioning the patient's ability to pay, a health care service plan shall not require a provider to obtain authorization prior to the provision of emergency services and care necessary to stabilize the enrollee's emergency medical condition." Subdivision (e) provides, "A health care service plan may delegate the responsibilities enumerated in this section to the plan's contracting medical providers."

In its second cause of action for statutory violations, Ochs contends that PacifiCare had a mandatory duty to pay for emergency services provided to PacifiCare enrollees under section 1371.4, subdivision (b). Ochs also argues that under sections 1371 and 1371.35, subdivision (f), PacifiCare's duty to pay for services cannot be waived. PacifiCare responds that its delegation of its duties to FHN under section 1371.4, subdivision (e) absolved it of financial responsibility for claims that FHN was unable to pay.

The legal effect of a delegation under section 1371.4, subdivision (e) was recently addressed in *California Emergency Physicians Medical Group v. PacifiCare of California* (2003) 111 Cal.App.4th 1127 [4 Cal.Rptr.3d 583] (*Emergency Physicians*). *Emergency Physicians* concluded that a health care service plan does not remain liable for emergency care claims when the responsibility for those claims has been delegated to a contracting medical provider such as FHN under section 1371.4, subdivision (e). The court reasoned that when a duty held by a licensee such as a medical plan is deemed to be *non*delegable, the licensee remains liable for the nonperformance of its agents. (*Emergency Physicians*, at p. 1132.) "Because a licensee like PacifiCare remains liable for a *nondelegable* duty, when the Legislature used the term 'delegate' in subdivision (e), it must have intended that the obligations of section 1371.4 are *delegable* duties; that is, duties for which the health care service plan does not retain liability." (*Ibid.*)

■ We find this reasoning persuasive. A "delegation" is commonly understood to mean the "transfer of authority by one person to another, which may infer a general power to act for another's benefit or which may assign a debt to another." (Barron's Law Dict. (2d ed. 1984), p. 124.) The term does not always connote a complete relinquishment of rights or responsibilities by

the delegator.[2] But when the thing to be delegated is a legal *duty* of one party to another, the characterization of that duty as nondelegable is a shorthand way of saying that a party could not escape liability altogether by delegating this duty to someone else. (*Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 863 [237 Cal.Rptr. 282].) Conversely, to say a duty is delegable is to say that there is no residual liability.

■ Ochs argues that a delegation under section 1371.4, subdivision (e) does not relieve a health care service plan of its ultimate obligation to pay for emergency care unless the emergency care provider has agreed to look exclusively to another source of payment. It relies upon Civil Code section 1457, which provides, "The burden of an obligation may be transferred with the consent of the party entitled to its benefit, but not otherwise . . . ." We disagree with this analysis. PacifiCare's duty to pay Ochs is a statutory one arising exclusively from section 1371.4. Subdivision (e) of that section specifically allows a delegation of payment responsibilities to contracting medical providers. Assuming that Civil Code section 1457 applies to statutory as well as contractual obligations,[3] a health care service plan has no "obligation" to pay for emergency services within the meaning of Civil Code section 1457 when there has been a delegation under section 1371.4, subdivision (e). Section 1371.4 is a specific statute that takes precedence over the more general rule articulated in Civil Code section 1457 in cases where the former applies. (See *Lake v. Reed* (1997) 16 Cal.4th 448, 464 [65 Cal.Rptr.2d 860, 940 P.2d 311].)

The legislative history of section 1371.4 supports our conclusion that a health care service plan does not remain liable for emergency care payments delegated to a contracting medical provider under subdivision (e) of that section. Section 1371.4 was enacted in 1994 to require health care service plans to pay for emergency services by noncontracting physicians that were not preapproved and that otherwise might not be covered. Analyses of Senate Bill No. 1832, the progenitor of section 1371.4, noted that it "would shift decision making authority regarding the provision of services to emergency providers, which would significantly reduce the ability of the health plans to manage overall care and costs." (Dept. of Health Services, Enrolled Bill Rep. on Sen. Bill No. 1832 (1993–1994 Reg. Sess.), Sept. 9, 1994, p. 6.) Subdivision (e), allowing plans to delegate their payment responsibilities to

---

[2] For example, when a court delegates the decision regarding the time, place or manner of visitation to a social worker or guardian in a juvenile dependency case (see, e.g., *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1373–1374 [28 Cal.Rptr.2d 705]), it does not relinquish its own authority to establish visitation guidelines.

[3] The published cases discussing this provision involve assignments of contractual obligations. (See, e.g., *AICCO, Inc. v. Insurance Co. of North America* (2001) 90 Cal.App.4th 579, 588 [109 Cal.Rptr.2d 359]; *Baer v. Associated Life Ins. Co.* (1988) 202 Cal.App.3d 117, 123–124 [248 Cal.Rptr. 236], and cases cited therein.)

contracting medical providers, was added to reduce the opposition of several large health maintenance organizations. (*Emergency Physicians, supra,* 111 Cal.App.4th at p. 1132.) Because the delegation provision of section 1371.4, subdivision (e) was enacted as a concession to health care service providers to enable them to better manage their costs, construing the subdivision to allow a complete delegation of responsibility for emergency payments, with no residual liability for those payments, is consistent with its legislative purpose.

■ Also of note is the Legislature's approval of Senate Bill No. 117 in 2001, subsequently vetoed by the Governor, which would have amended section 1371.4 to retain subdivision (e), but added a new subdivision requiring health care service plans to pay emergency service providers if a contracting medical provider did not. (Sen. Bill No. 117 (2000–2001 Reg. Sess.) § 2, subd. (f).) The Legislature's adoption of a subsequent amendment that is ultimately vetoed may be considered as evidence of its understanding of the unamended, existing statute. (*Emergency Physicians, supra,* 111 Cal.App.4th at p. 1132, citing *Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 832 [25 Cal.Rptr.2d 148, 863 P.2d 218].)

■ Had it not been vetoed, the 2001 amendment would have materially changed section 1371.4 by providing that health care service plans that delegate their responsibilities to contracting medical providers remain ultimately liable for payment to emergency service providers. A material change in the language of a statute usually indicates an intent to alter rather than simply clarify the statute's meaning, although the circumstances surrounding the amendment may require a contrary conclusion. (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 568 [20 Cal.Rptr.2d 341, 853 P.2d 507]; *Kern v. County of Imperial* (1990) 226 Cal.App.3d 391, 400 [276 Cal.Rptr. 524].) Nowhere in the legislative history is it suggested that health care service plans were liable for unpaid emergency medical bills under the law as it then existed or that the amendment proposed in Senate Bill No. 117 was simply a clarification of the law. To the contrary, the legislative documents concerning Senate Bill No. 117 demonstrate that the 2001 amendment to section 1371.4 was intended to *change* the effect of a delegation of emergency care payment responsibilities by a health care service plan. "[U]nder the current system, the responsibility for payments for ER services is 'delegated' to medical groups or [independent practice associations] by [health care service] plans. The author [of Senate Bill No. 117] states that ER providers are frequently not paid for their services because the medical groups are on the verge of bankruptcy and thus do not pay their bills. The result is that fewer physicians are willing to come into the ER to provide emergency care." (Sen. Com. on Insurance, Analysis of Sen. Bill No. 117 (2000–2001 Reg. Sess.), Mar. 21, 2001.) This rationale for amending

the law is restated in the various legislative analyses of the bill, none of which conclude that the problems with emergency service compensation resulted from any misunderstanding or misapplication of section 1371.4. The clear implication is that the Legislature believed that, absent the amendment, health care service plans did not remain liable to pay for emergency services after a delegation.

■ The plain language of section 1371.4, subdivision (e) and its legislative history demonstrate that health care service plans do not have a statutory duty to pay for emergency services when they have delegated that responsibility to medical providers as permitted by statute. The recent decision in *Coast Plaza Doctors Hospital v. UHP Healthcare* (2002) 105 Cal.App.4th 693 [129 Cal.Rptr.2d 650], cited by Ochs, does not require a different result. The court in *Coast Plaza* held that an emergency care provider who had obtained an assignment from patients it treated could seek reimbursement directly from the patients' health care service plan. There was no issue concerning the health care service plan's delegation of its statutory duties.

We next consider Ochs's related argument that a duty to pay can be found in sections 1371 and 1371.35. Sections 1371 and 1371.35 establish timelines for the payment of claims by health care service plans. Section 1371 provides, "The obligation of the plan to comply with this section shall not be deemed to be waived when the plan requires its medical groups, independent practice associations, or other contracting entities to pay claims for covered services." Section 1371.35, subdivision (f) contains identical language. Ochs argues that under these clauses, PacifiCare could not avoid its duty to timely pay emergency health care bills by delegating that duty to an intermediary such as FHN.

■ Two published decisions have rejected the argument that the "non-waiver" clause contained in section 1371 requires a health care service plan to pay for emergency services when an intermediary fails to do so: *Desert Healthcare Dist. v. PacifiCare FHP, Inc.* (2001) 94 Cal.App.4th 781, 791 [114 Cal.Rptr.2d 623] and *California Medical Assn. v. Aetna U.S. Healthcare of California, Inc.* (2001) 94 Cal.App.4th 151, 160–162 [114 Cal.Rptr.2d 109] (*CMA*). Each concludes that the clause was "merely intended to require contracting entities, such as independent practice associations, to comply with the procedures for handling claims set forth in section 1371." (*Desert Healthcare,* at p. 791; *CMA,* at p. 163.) We agree with *Desert Healthcare* and *CMA* that section 1371 does not establish an independent basis of liability for health care payments. The reasoning of these cases

applies with equal force to the identically phrased nonwaiver clause of section 1371.35.[4]

For the reasons discussed, the first amended complaint did not state a cause of action for statutory violations of the Knox-Keene Act. Under the facts alleged in that pleading, PacifiCare had no statutory obligation to pay the claims by Ochs for emergency services. The demurrer was properly sustained without leave to amend on the cause of action for statutory violations.

Ochs argues that it is unjust to allow PacifiCare to delegate its statutory duty to pay for noncontract emergency services when physicians are required by law to provide such services regardless of a patient's inability to pay. We have no quarrel with the proposition that emergency care providers should be paid for the important services they provide, and, were we writing on a clean slate, we might well conclude that it is preferable for the health care service plan to bear the ultimate cost when an intermediary that it has selected becomes insolvent. But we are not at liberty to rewrite the relevant statutes or revise their legislative history to comport with a generalized sense of fairness. The Knox-Keene Act is a comprehensive scheme for regulating health care plans, and its provisions are the product of a variety of interests and concerns. The Legislature addressed some of the concerns of emergency room physicians when it enacted section 1371.4 in 1994 and required health care service plans to pay for emergency services by noncontracting physicians. But this new right was tempered by a provision that specifically allowed plans to delegate their payment responsibilities, thus allowing them to better manage their costs and pass the savings along to their insureds. Whatever the flaws of the current system, the solution must come from the Legislature and not the courts.

## 2. Unfair Business Practices

■ Ochs's ninth cause of action for unfair business practices under Business and Professions Code section 17200 rests exclusively on PacifiCare's delegation of responsibility to FHN and its failure to pay claims for emergency services. Although Business and Professions Code section 17200 broadly proscribes "any unlawful, unfair or fraudulent business act or practice," it does not apply when specific legislation provides a "safe harbor" for the conduct at issue. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d

---

[4] We rely upon *Desert Healthcare Dist. v. PacifiCare FHP, Inc., supra,* 94 Cal.App.4th 781, and *CMA, supra,* 94 Cal.App.4th 151, solely for their analysis of section 1371. They are otherwise distinguishable from the case before us because they involved claims for nonemergency services brought by physicians who had agreed in writing to seek payment from a designated intermediary. Neither one discussed section 1371.4 or considered whether that statute imposes a duty to pay for emergency services despite a delegation to an intermediary.

527].) Section 1371.4, subdivision (e) provides a statutory safe harbor for health care service plans that have delegated the obligation to pay for emergency services to their contracting medical providers. (*Emergency Physicians*, *supra*, 111 Cal.App.4th at p. 1133.)

### 3. *Negligence*

The seventh cause of action for negligence is similarly based on PacifiCare's failure to pay for emergency services that Ochs rendered to enrollees of FHN. The allegations of the first amended complaint do not establish that PacifiCare owed Ochs a legal duty to pay for those services; to the contrary, the allegations show that PacifiCare had delegated its duty to pay for such services and did not remain liable. Absent facts establishing a duty to pay, PacifiCare cannot be liable for its failure to do so on a theory of negligence. (See generally *Emergency Physicians*, *supra*, 111 Cal.App.4th at pp. 1135–1136.)

### 4. *Declaratory and Injunctive Relief*

The first and fifth causes of action for injunctive and declaratory relief were wholly derivative of Ochs's claims for statutory violations. As the facts do not support a claim that PacifiCare violated section 1371.4, 1371 or 1371.35, there are no grounds for granting an injunction or declaratory relief based on purported violations of those statutes.

### 5. *Quantum Meruit and Common Counts for Services Rendered*

■ Ochs's fourth cause of action seeking quantum meruit recovery was also insufficient as a matter of law. To recover on a claim for the reasonable value of services under a quantum meruit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant. (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 248 [119 Cal.Rptr.2d 606].) But accepting as true the allegation that Ochs performed emergency medical services "at the special instance and request" of PacifiCare, quantum meruit recovery is inappropriate where it would frustrate the law or public policy. (*Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1315 [265 Cal.Rptr. 525].) In *Emergency Physicians*, the court concluded that it would thwart the Legislature's intent to require that PacifiCare pay compensation for a delegated statutory obligation under a quantum meruit theory when the law expressly permits such delegations. (*Emergency Physicians*, *supra*, 111 Cal.App.4th at pp. 1136–1137.) We agree and conclude there is no cause of action for quantum meruit under the facts alleged. The third cause of action for a common count to recover payment for services rendered fails for the same reason.

6. *Third Party Beneficiary*

The eighth cause of action alleges that Ochs is entitled to recover payment for emergency services to PacifiCare and FHN enrollees as a third party beneficiary of the written contract between those enrollees and PacifiCare. This claim is based on Civil Code section 1559, which provides, "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

■ A third party may qualify as a beneficiary when it appears from the terms of the contract itself that the contracting parties intended to benefit the third party. (*Jones v. Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1724 [33 Cal.Rptr.2d 291].) The first amended complaint alleged that PacifiCare entered into a written agreement with its enrollees "which was made in part for [Ochs's] benefit in that [PacifiCare] undertook to provide medical services to its enrollees and that included an express or implied agreement to pay [Ochs] for services rendered to enrollees of [PacifiCare]."

■ PacifiCare argues that the amended complaint is deficient because Ochs did not attach a copy of the written contract or set forth the specific contractual language supporting its allegation of third party beneficiary status. In an action based on a written contract, the plaintiff may plead the legal effect of the contract rather than its precise language. (*Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198–199 [126 Cal.Rptr.2d 908, 57 P.3d 372].) Third party beneficiary status is a matter of contract interpretation, and it follows that the same rules apply. We thus consider whether the allegations in the complaint are sufficient to establish a prima facie right to relief. (See *id.* at p. 199.)[5]

■ The amended complaint alleges that Ochs is a third party beneficiary because PacifiCare agreed to pay for services it rendered to PacifiCare enrollees. Generally speaking, a health care service provider's agreement to pay for medical care is intended to benefit the enrollees, not treating physicians with whom there is no contractual relationship. (See generally *Hollister v. Benzl* (1999) 71 Cal.App.4th 582, 586–587 [83 Cal.Rptr.2d 903] [treating physician not employed by HMO was neither a party to nor a third party beneficiary of the contract between patients and HMO and was not bound by that contract's arbitration agreement].) Under ordinary circumstances, noncontracting health care providers such as Ochs would be only incidental beneficiaries of a contractual agreement to pay for an enrollee's medical care. The first amended complaint does not allege a more specific

---

[5] PacifiCare's request that we take judicial notice of two standard contracts with its enrollees, filed September 12, 2003, is denied.

agreement that might support a third party beneficiary theory, and the demurrer was properly sustained as to this count.

## 7. *Declaratory Relief—Right to Bill Patients*

Ochs's sixth cause of action for declaratory relief seeks a declaration that it is entitled to directly bill patients for emergency care if neither FHN nor PacifiCare pays for those services. The parties affected by such a declaration would be the patients themselves, not PacifiCare. PacifiCare was misjoined as a party and the demurrer to this cause of action was properly sustained.[6] (See *State of California v. Superior Court* (1974) 12 Cal.3d 237, 255 [115 Cal.Rptr. 497, 524 P.2d 1281].)

It is unnecessary to address PacifiCare's alternative argument that the first amended complaint failed to state a cause of action because section 1379 precludes Ochs from directly billing patients for its services. We observe, however, that section 1379 appears only to limit "balance billing" of insured patients by physicians who have contracted with the patients' plans. Ochs may have a remedy against the individual patients, and those patients a remedy against PacifiCare.

### *Order Denying Leave to Amend*

■ Having concluded that the general demurrer to the first amended complaint was properly sustained, we consider whether the trial court should have granted Ochs leave to amend. The court's denial of leave to amend is reviewed for abuse of discretion, which is demonstrated if there is a reasonable possibility that the pleading could be cured by amendment. (*Lee v. Los Angeles County Metropolitan Trasportation Authority* (2003) 107 Cal.App.4th 848, 854 [132 Cal.Rptr.2d 444]; *Trader Sports, Inc. v. City of San Leandro, supra,* 93 Cal.App.4th at pp. 43–44.) The plaintiff has the burden of showing that the pleading can be cured, but may make this showing for the first time on appeal. (*Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1623 [33 Cal.Rptr.2d 276].)

Ochs argues that if given the opportunity, it could plead that FHN was an agency or "shell" of PacifiCare. As to the negligence cause of action, Ochs additionally offers to plead that PacifiCare knew or should have known that FHN was insolvent based on its audits of that entity, resulting in foreseeable financial harm to Ochs.

---

[6] In addition to its general demurrer, PacifiCare specially demurred to the sixth cause of action on the ground of misjoinder. (Code Civ. Proc., § 430.10, subd. (d).) The trial court did not cite misjoinder in its statement of decision as a ground for granting the demurrer, but we review the result of its ruling, not the reasoning. (*Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 22 [116 Cal.Rptr.2d 583].)

The first of these proposed amendments would contradict the allegations of the first amended complaint, which described the relationship between PacifiCare and FHN in a manner inconsistent with an agency. A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 [6 Cal.Rptr.2d 151].) Ochs has not demonstrated a reasonable possibility that the complaint could be amended to properly allege that PacifiCare was liable for FHN's failure to pay under an agency theory.

However, it is reasonably probable that Ochs's proposed amendment to the negligence cause of action would supply facts sufficient to state a claim. According to the opening brief, the complaint could be amended to allege that Ochs suffered an economic loss because PacifiCare contracted with FHN when it knew or should have known that FHN was insolvent. In certain circumstances, the law recognizes a duty to manage one's business affairs to protect against the economic loss of a third party. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 57–58 [77 Cal.Rptr.2d 709, 960 P.2d 513].) Recognition of a duty to a person not in contractual privity is a matter of policy involving the balancing of several factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blameworthiness of that conduct; and (6) the policy of preventing future harm. (*Id.* at p. 58, citing *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16].) Though the recognition of a duty to protect third parties from economic harm is the exception, rather the rule, these factors could weigh in favor of imposing a duty in this case, depending on the specific facts alleged.

We reject PacifiCare's argument that a claim of negligent delegation is precluded because it would require a showing that the allegedly negligent conduct was intended to affect Ochs specifically, rather than simply the class of emergency physicians who treat PacifiCare/FHN enrollees. This argument is based on language in *Emergency Physicians* and *Desert Healthcare* to the effect that when economic damages are sought, the conduct must have been intended to affect the specific plaintiff rather than persons of the class to which the plaintiff belongs. (See *Emergency Physicians, supra,* 111 Cal.App.4th at pp. 1135–1136; *Desert Healthcare Dist. v. PacifiCare FHP, Inc., supra,* 94 Cal.App.4th at p. 792 [114 Cal.Rptr.2d 623].) But it is well established that liability for negligent conduct may be imposed when a duty is owed to the plaintiff *or to a class of which the plaintiff is a member.* (*Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1449 [37 Cal.Rptr.2d 790], citing *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407,

598 P.2d 60].) Ochs should be given an opportunity to file an amended complaint to allege additional facts supporting a negligence cause of action.

## DISPOSITION

The order of dismissal is reversed. The trial court is directed to vacate its order sustaining the demurrer to the first amended complaint without leave to amend and to enter a new order (1) sustaining the demurrer with leave to amend as to the seventh cause of action for negligence, and (2) sustaining the demurrer without leave to amend as to the remaining causes of action. The parties shall bear their own costs on appeal.

Gilbert, P. J., and Yegan, J., concurred.