[No. B154919. Second Dist., Div. Four. Dec. 23, 2002.]

COAST PLAZA DOCTORS HOSPITAL, Plaintiff and Appellant, v. UHP HEALTHCARE, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, and III of the Discussion.

694

## COUNSEL

Payne & Fears, Daniel L. Rasmussen, Thomas L. Vincent and Paul A. Bokota for Plaintiff and Appellant.

Miller & Holguin, Deborah A. Klar, Kent A. Halkett and Stacey L. Zill for Defendant and Respondent.

## OPINION

**EPSTEIN, Acting P. J.**—The issue in this case is whether a health care provider has a right to seek reimbursement directly from the health care insurer for services rendered to enrollees of the health care plan. Its resolution depends in part on whether, under the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq., Knox-Keene Act) an insurer has a direct obligation to reimburse the provider. In the published portion of this opinion we conclude that the Knox-Keene Act does not apply to the factual circumstances here, and does not bar the provider from seeking direct compensation on a common law breach of contract theory or under the unfair competition law (Bus. & Prof. Code, § 17200).

In the unpublished portion of the opinion we conclude the trial court erred in sustaining a demurrer as to the cause of action for breach of contract by assignment, but correctly sustained the demurrer without leave to amend to the causes of action for breach of implied contract, breach of contract based on third party beneficiary theory, open book account, quantum meruit, and unjust enrichment. Because we conclude that the Knox-Keene Act does not apply to this case, we do not address the provider's argument about the constitutional application of that statute.

### FACTUAL AND PROCEDURAL SUMMARY

This appeal is from an order of dismissal following the sustaining of a demurrer without leave to amend. ■ "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the

standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

We take our factual summary from the allegations of the complaint. Coast Plaza Doctors Hospital (Coast) is a health care facility and provider, offering emergency and other care to the general public. Coast provided emergency and other services to patients (Patients) who were insured under health insurance policies issued by UHP Healthcare (UHP).[1] When Patients were admitted to Coast for medical care, they executed an assignment to Coast of their rights to reimbursement by UHP. Coast attached an exhibit to the complaint detailing the names of the Patients, the dates of treatment and the cost of treatment.

UHP was obligated under its policies to pay for the reasonable and necessary health care expenses incurred by Patients. Coast alleged that UHP knew that Patients living in the Norwalk area were likely to seek treatment from its facility in that region. Coast alleged that UHP understood that health care facilities and hospitals would provide medical care to Patients in reliance on the insurance contract between Patients and UHP. It also alleged that "[i]n consideration for Coast's implied agreement to treat the Patients, Defendants implicitly agreed to reimburse Coast for the reasonable expenses incurred by the Patients in the course of such treatment." According to the allegations of the complaint, Coast and UHP acted consistently with this implied agreement. Coast claims entitlement to reimbursement for $1,149,915.16 for treatment it provided to Patients.

Coast sued UHP, alleging causes of action for breach of contract under Health and Safety Code section 1371 (all statutory references are to that code unless otherwise indicated); breach of contract based as a third party beneficiary; breach of contract based on assignment; open book account;

---

[1]In its demurrer, defendant UHP describes itself as WATTSHealth Foundation Inc., doing business as UHP Healthcare. We use the designation appearing in the complaint.

quantum meruit; violation of Business and Professions Code section 17200; unjust enrichment; and violation of section 1371.35.

The complaint does not allege that Coast had any agreements with physician groups, capitation contracts or other service agreements with any health maintenance organization or intermediary organizations such as large medical groups, independent physician organizations or limited Knox-Keene license plans. While Coast does not specifically deny entering into such agreements with UHP, both sides treat the matter on the assumption that it did not. That is consistent with the complaint, and we shall review the issues on that assumption.

UHP demurred on the ground that Coast lacked standing to pursue any of the claims. UHP also maintained that it had no responsibility to Coast for the services provided to Patients. It denied an implied agreement to pay for the medical services provided by Coast; that Coast was an intended third party beneficiary under its contracts with Patients; and that Coast was an assignee of the rights of the Patients. It contended there were no facts alleged to establish that UHP had been unjustly enriched or that it had engaged in any unlawful, unfair or fraudulent business practice in violation of Business and Professions Code section 17200. Finally, it argued that there is no separate, cognizable claim for a violation of section 1371.35 as claimed in the eighth cause of action.

In support of its demurrer, UHP asked the court to take judicial notice of extensive materials, including a November 1998 petition to the Commissioner of the Department of Corporations to adopt a regulation, a Department of Corporations decision in December 1998 declining to do so, and trial court minute orders in cases brought in the Superior Courts in San Diego, Riverside and Orange Counties. We also are asked to judicially notice the first amended complaint in the Orange County litigation.

Coast opposed the demurrer, challenging the propriety of UHP's reliance on the matters contained in the request for judicial notice. It also argued that its claims were supported by section 1371 and that it had standing to bring them. Coast argued that it had sufficiently pled each cause of action and requested leave to amend if the demurrer was sustained, and requested the court to take judicial notice of the Department of Managed Health Care Report of Nonroutine Examination, file No. 933 0008, dated August 7, 2001.

The trial court sustained the demurrer without leave to amend. It found "that the gravamen of the plaintiff's complaint seeks to enforce the provisions of the Knox-Keene Act. The Legislature has vested jurisdiction over

such enforcement exclusively in the Department of Corporations and, therefore, leave to amend is denied and this action is dismissed."

The complaint was dismissed and Coast filed a notice of appeal from the order of dismissal. There is no indication that a judgment of dismissal was entered. ■ The order sustaining the demurrer is not itself appealable. (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 741, fn. 2 [122 Cal.Rptr.2d 787].) We agree with the observation of the court in *Smith v. Hopland Band of Pomo Indians* (2002) 95 Cal.App.4th 1, 3, footnote 1 [115 Cal.Rptr.2d 455] to the effect that it fails "to understand why the clearly established law on this point continues to be disregarded, in the interest of judicial economy, we shall deem the order to incorporate a judgment of dismissal." Nevertheless, we follow common practice in deeming the appeal to be from a judgment.

DISCUSSION

I-III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

■ Coast's sixth cause of action is for violation of Business and Professions Code section 17200, the unfair competition law (UCL).[2] It alleges that UHP violated this statute by: (a) Failing to pay, underpaying, or delaying payment to Coast in violation of section 1371 and other statutes; (b) attempting to transfer patients at Coast to other hospitals in violation of 42 United States Code section 1395dd; and (c) attempting to transfer the Patients at Coast to other hospitals because Coast insisted that it honor its obligations under section 1371 et seq. ■ We assume, as we must at the demurrer stage, that Coast has alleged conduct that could be unlawful, unfair or fraudulent. (*Congress of Cal. Seniors v. Catholic Healthcare West* (2001) 87 Cal.App.4th 491, 495 [104 Cal.Rptr.2d 655].)

■ Section 17200 of the UCL defines "unfair competition" to "mean and include any unlawful, unfair or fraudulent business act or practice and

*See footnote, *ante*, page 693.

[2]"Business and Professions Code section 17200 does not bear a legislatively imposed title or name, but has been referred to as the 'unfair competition law' or the 'UCL.' (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 558, fn. 2 [71 Cal.Rptr.2d 731, 950 P.2d 1086].)" (*Walker v. Countrywide Home Loans, Inc.* 2002) 98 Cal.App.4th 1158, 1168, fn. 1 [121 Cal.Rptr.2d 79].)

unfair, deceptive, untrue or misleading advertising" and any act prohibited by section 17500. "The California Supreme Court confirmed that the test for determining a violation of the unfair competition law is a disjunctive one; namely, a plaintiff may show that the acts or practices at issue are either unlawful or unfair or deceptive." (*Walker v. Countrywide Home Loans, Inc.*, *supra*, 98 Cal.App.4th at p. 1168, citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].)

UHP argues that to the extent Coast bases its unfair competition claim on a violation of section 1371, it fails because that statute does not obligate UHP to pay for the services at issue.

UPH took the position in the trial court and in its briefing here that the Knox-Keene Act applies and precludes Coast from obtaining reimbursement from UPH. Coast argues that this body of law does not apply here because this case does not involve a contract between UPH and an intermediary or a contract between Coast and an intermediary. We begin our analysis with an examination of the regulatory scheme.

█ The Knox-Keene Act is " 'a comprehensive system of licensing and regulation' (*Van de Kamp v. Gumbiner* (1990) 221 Cal.App.3d 1260, 1284 [270 Cal.Rptr. 907]), formerly under the jurisdiction of the Department of Corporations (DOC) and presently within the jurisdiction of the Department of Managed Health Care (DMHC) [citation]. 'All aspects of the regulation of health plans are covered, including financial stability, organization, advertising and capability to provide health services.' (*Van de Kamp*, at p. 1284.)" (*California Medical Assn. v. Aetna U.S. Healthcare of California, Inc.* (2001) 94 Cal.App.4th 151, 155, fn. 3 [114 Cal.Rptr.2d 109] (*Aetna*).)

█ Section 1371 provides that a health care service plan is to reimburse uncontested claims no later than 30 working days after receipt, unless it is a health maintenance organization, in which case it has 45 days to pay. It also provides: "The obligation of the plan to comply with this section shall not be deemed to be waived when the plan requires its medical groups, independent practice associations, or other contracting entities to pay claims for covered services." This clause has been referred to in the regulatory and case law as the "nonwaiver clause."

UHP relies on extensive extrinsic evidence presented to the trial court in its request for judicial notice, and two cases interpreting section 1371

decided shortly after Coast filed its notice of appeal. All of this material relates to whether a provider who has a contract with an intermediary agency is entitled to compensation directly from a health care plan insurer. The material we are asked to judicially notice is irrelevant to the issue before us because all of it is based on contractual relationships between a health care insurer, an intermediary, and a provider.[3] Because there is no allegation of such an arrangement in this case, we must assume that there was none. As we have noted, that is the position taken by both parties in their briefing.

UHP cites *Aetna, supra,* 94 Cal.App.4th 151. In that case, the plaintiff, California Medical Association, Inc. (CMA), was the assignee of claims owned by physicians and medical groups. CMA sued two health care insurers for payments allegedly owed to physicians for services provided to enrollees in health care service plans operated by defendants. The decision explains the typical contractual relationships under which patient care is provided and reimbursed under the Knox-Keene Act.

The defendant insurers entered into "Defendant-Enrollee Agreements" with their enrollees that imposed obligations upon defendants to pay for services rendered by physicians to enrollees. They also entered into "Defendant-Intermediary Agreements" with various contracting entities including large medical groups, independent practice associations and limited Knox-Keene license plans. Under those agreements, defendants paid their agent intermediaries to perform specific tasks on behalf of defendants, including signing up panels of primary care and specialty physicians, processing claims and making payments to physicians. The intermediaries then entered into agreements with physicians to provide health services to defendants' enrollees. To participate in the managed care plans offered by the defendants, physicians were required to enter into "Intermediary-Physician Agreements" or otherwise be accepted into panels of providers established by the intermediaries. Once care was provided to an enrollee, the physician submitted a claim to defendants through the intermediaries. According to the CMA, the Intermediary-Physician Agreements required the providers to " 'look solely' " to intermediaries for payment for the services they provided to enrollees by the physicians. (*Aetna, supra,* 94 Cal.App.4th at pp. 156-157.)

But due to insolvency, many intermediaries failed to pay physicians for these services. The defendants maintained their contractual relationship with these insolvent intermediaries, despite knowledge of their financial

---

[3]This also disposes of Coast's arguments that the trial court erred in relying on improper extrinsic evidence presented in the request for judicial notice.

instability and continued to make payments to them. The defendants denied repeated demands for direct payment by the physicians, while still collecting premiums from their enrollees. (*Aetna, supra,* 94 Cal.App.4th at p. 157.)

In *Aetna,* CMA argued that section 1371 imposed an obligation on the insurer to pay for all covered medical services rendered by physicians to defendants' enrollees even when defendants purported to delegate such obligation to intermediaries. It further alleged that the defendants failed to make these payments within the time frames specified in section 1371, and that any contractual provision purporting to waive these requirements or other portions of the statute was unlawful. (*Aetna, supra,* 94 Cal.App.4th at p. 160.)

CMA asserted that the defendants were obligated to the physicians under the nonwaiver clause we have quoted, despite language in the intermediary agreements imposing the ultimate responsibility to pay the physician's claims on the intermediaries. The *Aetna* court held that the statutory nonwaiver clause "simply means that section 1371's time limits and other procedural requirements must be satisfied even when health plans have delegated their payment obligations to contracting entities under risk-shifting agreements consistent with other Knox-Keene provisions." (*Aetna, supra,* 94 Cal.App.4th at p. 161.)

The court also examined the legislative history of section 1371 and found nothing "indicating that section 1371 was intended to impose an obligation on health plans to pay treating physicians where the plans had no contractual obligation to do so." (*Aetna, supra,* 94 Cal.App.4th at p. 163.) Based on this history, the court concluded that the nonwaiver clause was "intended simply to require contracting entities such as Intermediaries to make timely compliance with the statute's procedures for handling claims"; CMA failed to identify anything in the legislative history indicating that section 1371's statutory nonwaiver clause was intended to require health plans to pay treating physicians absent a contractual obligation to do so. (*Aetna,* at p. 163.)

The *Aetna* court also noted that the Department of Corporations had denied a request by the CMA that it issue a regulation to make health plans the primary obligors for payments of claims notwithstanding contractual provisions to the contrary. (*Aetna, supra,* 94 Cal.App.4th at pp. 163-164.)

The analysis in *Desert Healthcare Dist. v. PacifiCare, FHP, Inc.* (2001) 94 Cal.App.4th 781 [114 Cal.Rptr.2d 623] (*Desert Healthcare*) was similar. In

that case, a hospital sued a health care service plan for the cost of services provided to enrollees of the plan. The insurer, PacifiCare, had contracted with an intermediary, Desert Physician's Association (DPA). This was a capitation agreement for which PacifiCare paid a flat fee per person to DPA to provide physicians and obtain hospital services for PacifiCare's subscribers. The intermediary, DPA, contracted with a provider, Desert Healthcare, to obtain hospital services for PacifiCare's subscribers. Under this arrangement, Desert Healthcare billed DPA rather than PacifiCare for the services it provided to PacifiCare subscribers. DPA filed for bankruptcy, extinguishing its debt to Desert Healthcare for millions of dollars. Desert Healthcare sued PacifiCare to recover payment for the services it rendered to PacifiCare's subscribers under the contract with DPA.

The court rejected Desert Healthcare's argument that the nonwaiver clause of section 1371 of the Knox-Keene Act required PacifiCare to bear the ultimate responsibility for the services provided despite its capitation agreement with DPA. (*Desert Healthcare, supra*, 94 Cal.App.4th at p. 786.) Like the *Aetna* court, it held that whether read in isolation or as a part of the whole statute, the nonwaiver clause did not impose an obligation on the insurer to pay the provider directly. (*Id.* at p. 788.) It merely "imposes certain procedural requirements on the processing of claims; it does not create a new, independent basis for liability." (*Ibid.*) The *Desert Healthcare* court also held that Desert Healthcare's interpretation would destroy capitation agreements allowed under other provisions of the Knox-Keene Act. (*Id.* at p. 789.)

Thus, both courts concluded that the nonwaiver clause was intended to require contracting entities to comply with the procedures for handling claims set forth in section 1371. (*Desert Healthcare, supra*, 94 Cal.App.4th at p. 791.) "[T]he intent of the Legislature in enacting section 1371 is clear: to motivate health care service plans to require their contracting entities to comply with section 1371 by subjecting the plans to disciplinary action and penalties for the failures of contracting entities. The nonwaiver clause was never intended to create an independent basis for liability." (*Ibid.*, fn. omitted.)

The analyses in *Aetna* and *Desert Healthcare* were based on the existence of risk-shifting agreements sanctioned by the Knox-Keene Act by which the health plan insurers shifted the obligation to pay provider claims to intermediaries. As we have discussed, there is no such arrangement in this case.

This brings us back to the specific allegations of the cause of action for violation of the UCL. Coast alleged that UHP violated the UCL by failing to

reimburse Coast for the services provided, as required by "a statutory obligation to compensate Coast and other health care providers under various provisions of the law, including without limitation, California Health & Safety Code Section 1371." It also claims a violation of the UCL based on UHP's alleged "attempting to transfer the Patients at Coast to other hospitals because Coast insisted that Defendants honor their obligations under California Health & Safety Code section 1371, et seq."

In reply, UHP makes a single argument in support of the demurrer to the claim: "To the extent that Coast bases its Section 17200 claim on [UHP's] alleged violation of Section 1371, the claim fails because Section 1371 does not impose upon [UHP] an obligation to pay for the services at issue" referencing its discussion of *Aetna, supra,* 94 Cal.App.4th 151, and *Desert Healthcare, supra,* 94 Cal.App.4th 781.

In *Aetna, supra,* 94 Cal.App.4th 151, 169, the court said: "Although Business and Professions Code section 17200 does not confer on private party CMA a general power to enforce Knox-Keene, CMA may nonetheless sue to enjoin acts made unlawful by Knox-Keene. [Citation.]" The *Aetna* court concluded that there was no viable cause of action under the UCL because the insurer did not violate the Knox-Keene statutory enforcement scheme since it had no obligation to pay the provider directly. (*Ibid.*)

As we have discussed, the decisions in *Aetna* and *Desert Healthcare* do not deal with the situation presented in this case. UHP's challenge to the UCL cause of action, as stated in its papers, is entirely premised on the applicability of this authority. Since it does not apply, UHP is left with no articulated basis to support its demurrer to this cause of action with respect to the alleged violations of the Knox-Keene Act.

In its discussion of the UCL cause of action, UHP also asserts that Coast has not pled any other valid theory that would create an obligation on UHP to pay Coast, and that, without an obligation to pay in the nonpublished portion of this opinion, there can be no violation of section 1371. But, as we have discussed, Coast has adequately alleged an obligation to pay based on the assignment of the Patients' rights under their policies with UHP to Coast. Coast also alleged that UHP's pattern of withholding payment constituted a violation of the UCL. This adequately alleged an unfair business practice within the meaning of the UCL. (See *Searle v. Wyndham Internat., Inc.* (2002) 102 Cal.App.4th 1327, 1332-1333 [126 Cal.Rptr.2d 231].) We

therefore conclude that UHP's demurrer should not have been sustained on the UCL cause of action.[4]

Coast also predicates its claim for violation of the UCL on the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 United States Code section 1395dd. ■ "Congress enacted EMTALA in 1986 to address the problem of 'dumping' patients in need of medical care but without health insurance. [Citations.] Though originally intended to cure the evil of dumping patients who could not pay for services, the rights guaranteed under EMTALA apply equally to all individuals whether or not they are insured." (*Phillips v. Hillcrest Medical Center* (10th Cir. 2001) 244 F.3d 790, 796.) The Tenth Circuit Court of Appeals explained the duties of a hospital under the EMTALA: "Under EMTALA, a participating hospital has two primary obligations. [Citation.] First, the hospital must conduct an initial medical examination to determine whether the patient is suffering from an emergency medical condition. [Citation.] The second obligation requires the hospital, if an emergency medical condition exists, to stabilize the patient before transporting him or her elsewhere. [Citation.] To ensure compliance with these obligations, Congress created a private cause of action. [Citations.]" (*Ibid.*)

■ Coast's argument is based on the second obligation, involving the transfer of patients. UHP argues that transfers are authorized by the act if the patients are stabilized, and that the cause of action is inconsistent with the statute's plain terms. UHP's argument is more suited to summary judgment than a demurrer. Coast has argued that UHP attempted to transfer patients in violation of the EMTALA. On demurrer we must assume the truth of that allegation. (*Congress of Cal. Seniors v. Catholic Healthcare West, supra,* 87 Cal.App.4th at p. 495.) This basis for the violation of Business and Professions Code section 17200 was adequately pleaded.

V

■ Finally, we address arguments regarding the propriety of the litigation in light of the extensive statutory scheme codified in the Knox-Keene Act. Coast argues the trial court's ruling that the Department of Corporations (now Department of Managed Health Care) has exclusive jurisdiction to enforce the Knox-Keene Act is unconstitutional. UHP argues that Coast has no standing to assert a private right of action under the Knox-Keene Act and

---

[4]Apparently Coast has abandoned its eighth cause of action for violation of section 1371.35 of the Knox-Keene Act because it has not argued that trial court erred in sustaining the demurrer as to that cause of action.

that all of Coast's claims are based on violations of, or obligations imposed, by that act. UHP also asserts that we should exercise judicial restraint and abstain from allowing Coast to pursue its common law remedies in deference to the Department of Managed Health Care.

Because our review is de novo, we are not bound by the trial court's ruling on the exclusive jurisdiction of the Department of Managed Health Care. (*Aubry v. Tri-City Hospital Dist., supra,* 2 Cal.4th at pp. 966-967.) We conclude that the department does not have exclusive jurisdiction, and that common law and other statutory causes of action may be brought by Coast.

We disagree with UHP's argument that Coast has no standing. First, it is based on a mischaracterization of the allegations of the complaint. Not every cause of action is based on the Knox-Keene Act. As to the cause of action for violation of Business and Professions Code section 17200, which is, at least in part, based on violations of Knox-Keene Act, we agree with the *Aetna* court that conduct in violation of the Knox-Keene Act may be the basis for a cause of action under Business and Professions Code section 17200. (*Aetna, supra,* 94 Cal.App.4th at p. 169.)

The Knox-Keene Act itself contemplates that a health care plan may be held liable under theories based on other law. Section 1371.25 provides: "A plan, any entity contracting with a plan, and providers are each responsible for their own acts or omissions, and are not liable for the acts or omissions of, or the costs of defending, others. Any provision to the contrary in a contract with providers is void and unenforceable. *Nothing in this section shall preclude a finding of liability on the part of a plan, any entity contracting with a plan, or a provider, based on the doctrines of equitable indemnity, comparative negligence, contribution, or other statutory or common law bases for liability.*" (Italics added.)

Coast also cites section 1371.37. That statute prohibits and defines unfair payment patterns, which includes engaging in a demonstrable and unjust pattern of denying complete and accurate claims, and provides for sanctions to be imposed by the Director of the Department of Managed Health Care. But subdivision (f) of section 1371.37 states: "The penalties set forth in this section *shall not preclude, suspend, affect, or impact any other duty, right, responsibility, or obligation under a statute or under a contract between a health care service plan and a provider.*" (Italics added.)

Coast has standing to pursue these causes of action and the Knox-Keene Act is not a bar. In addition, we reject UHP's argument that we should defer to the Department of Managed Health Care in the area of health care finance.

The Knox-Keene Act itself contemplates that a provider may have a cause of action under a statutory or common law theory, as we have discussed. Since Coast did not have a contract with either UHP or an intermediary acting on behalf of UHP, we find no basis to conclude that the department had exclusive jurisdiction.

### DISPOSITION

The order of dismissal is reversed so far as it pertains to the causes of action for breach of contract by assignment and violation of Business and Professions Code section 17200, and is affirmed in all other respects. Each side is to bear its own costs on appeal.

Hastings, J., and Curry, J., concurred.

On January 22, 2003, and February 7, 2003, the opinion was modified to read as printed above.