[No. B174455. Second Dist., Div. Four. Oct. 11, 2005.]

EUNICE VIOLA et al., Plaintiffs and Appellants, v.
DEPARTMENT OF MANAGED HEALTH CARE et al., Defendants and
Respondents.

300

COUNSEL

Angelo & Di Monda, Christopher E. Angelo, Joseph Di Monda; Spellberg & Kornarens and Anthony Kornarens for Plaintiffs and Appellants.

G. Lewis Chartrand, Amy L. Dobberteen and Troy R. Szabo for Defendants and Respondents.

OPINION

**EPSTEIN, P. J.**—The issue in this case is whether the Department of Managed Health Care (Department) must reject health care service plans that include mandatory binding arbitration provisions. Plaintiffs argue such plans are in derogation of their right to civil jury trial, and must be rejected. They have sought judicial intervention to prevent approval of such plans. We conclude that plaintiffs are not entitled to the relief they seek because the Legislature has authorized arbitration of disputes under health care service plans and the governing statutory scheme does not authorize the Department to mandate a choice of forums. We shall affirm the order of the trial court denying relief.

## FACTUAL AND PROCEDURAL SUMMARY

The issue in this case is whether the Department may approve health care service plans in which the only method for resolution of disputes is mandatory arbitration. Plaintiffs contend the Department may not approve such a plan and sought judicial intervention to prevent it from doing so. We conclude that plaintiffs are not entitled to the relief they seek because the Legislature has authorized arbitration of disputes under health care service plans and the governing statutory scheme does not authorize the Department to reject contracts that require that form of dispute resolution. We shall affirm the order of the trial court denying relief.

The complaint alleges that Michael Viola is president of Viola Incorporated, and that his wife, Eunice, is an insured under Viola's health benefit plan. In November 2001, the Viola company applied to Health Net Life Insurance Company for a small business plan group services agreement to

provide health insurance coverage for its employees. Health Net responded with a plan that contained a mandatory binding arbitration clause. Under that provision, disputes arising from the plan would be resolved by binding arbitration without the right to jury trial. This language was approved by defendants pursuant to the Knox-Keene Health Care Service Plan Act of 1975 (the Knox-Keene Act). (Health & Saf. Code, § 1340 et seq.; all statutory references are to that code unless otherwise indicated.) Health Net refused to negotiate an alternative to binding arbitration. The Violas allege that the practice of requiring mandatory binding arbitration "is followed by all health care plans doing business within the State of California pursuant to approvals granted by Defendants." Health Net refused to issue a policy for health coverage to the Violas because they would not accept the arbitration clause.

Plaintiff Michael Giammateo alleges that his employer offered him a Blue Cross of California health care plan containing a mandatory arbitration clause. He signed up for the plan, but crossed out all references to mandatory arbitration. His employer informed him that Blue Cross refused to provide a health care plan to the company because of these alterations. Fearing termination, and under duress, Giammateo agreed to the mandatory arbitration clause, stating in writing that his consent was obtained by duress. Plaintiff Moira Giammateo was an additional insured under her husband's policy.

Beginning in 1998, plaintiff Muzeyyen Balaban-Zilke, an employee of the County of Los Angeles, was offered a choice of six health care plans provided by her employer. Each contained a mandatory arbitration clause. She selected CIGNA Healthplans of California as her health insurance provider, and learned during a dispute with CIGNA that the policy contained a mandatory arbitration clause.

In May 2002, plaintiff Vicki Magee, a police officer employed by the City of Los Angeles, was offered a health insurance plan from Blue Cross as part of her employment benefits. When she learned the policy contained a mandatory arbitration clause, she told her employer she did not want to waive her right to jury trial. The Los Angeles Police Relief Association told her that each policy offered to Los Angeles police officers contained an arbitration clause and that Magee's only choices were to agree to arbitration, or not participate in the employee health plans. Magee accepted the plan.

Plaintiffs allege that their state and federal constitutional rights to civil jury and due process were violated by state action when the defendants approved contract language in health care contracts of adhesion. They allege defendants were compelled to insist that health care plan contracts provide the insured have a right to decline mandatory arbitration, and that the defendants refused

their request to compel health care insurers to remove mandatory arbitration clauses from their plans by refusing to approve any group plan that includes them.

Plaintiffs sought "a judicial determination of their rights and a declaration as to the constitutionality of DEFENDANTS' action of approving health care plan contracts of adhesion in which PLAINTIFFS, and all other similarly situated persons, must surrender their inalienable and fundamental right to a civil jury trial without choice, while under duress, for unconscionable consideration, and without being given any meaningful choice or option in which they may retain their inalienable and fundamental right to a civil jury and court access." They also sought injunctive relief prohibiting defendants from approving any health care plan that did not provide a choice of jury trial for dispute resolution.

Defendants' demurrer was sustained without leave to amend. The trial court found that binding arbitration agreements are constitutional where an agent for the employee has waived the right to jury trial, citing *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699 [131 Cal.Rptr. 882, 552 P.2d 1178] (*Madden*). It concluded that there is no constitutional right to medical insurance through a health care service plan, and that the plaintiffs were not compelled to sign the plans containing the waiver of jury trial.

The trial court also addressed the Department's argument that neither it nor its directors are proper parties to the action because any dispute is between the plaintiffs and health care insurers and must be resolved through other means. The trial court ruled: "Plaintiffs argue this is a pre-contract matter and therefore they are not bound to go through administrative channels, but, if this is the case, the discussion above shows they have no cause of action. As the [Department] correctly points out, if this is a pre-contract matter, then Plaintiffs were not forced to waive any right to jury trial. There is nothing in this complaint to adjudicate."

The trial court granted plaintiffs' motion to reconsider the ruling in light of three newly decided cases; then, after additional briefing and a new hearing, again sustained the demurrer without leave to amend. An order of dismissal of the action was entered. Plaintiffs appeal from that order. We issued an opinion affirming the order, then granted rehearing to clarify the role of the Department in approving health care service plans.

## DISCUSSION

### I

■ " 'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The

reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)" (*Coast Plaza Doctors Hospital v. UHP Healthcare* (2002) 105 Cal.App.4th 693, 696–697 [129 Cal.Rptr.2d 650].)

## II

The Knox-Keene Act is " ' "a comprehensive system of licensing and regulation" (*Van de Kamp v. Gumbiner* (1990) 221 Cal.App.3d 1260, 1284 [270 Cal.Rptr. 907]), formerly under the jurisdiction of the Department of Corporations (DOC) and presently within the jurisdiction of the Department of Managed Health Care (DMHC) [citation]. "All aspects of the regulation of health plans are covered, including financial stability, organization, advertising and capability to provide health services." (*Van de Kamp,* at p. 1284.)' (*California Medical Assn. v. Aetna U.S. Healthcare of California, Inc.* (2001) 94 Cal.App.4th 151, 155, fn. 3 [114 Cal.Rptr.2d 109] . . . .)" (*Coast Plaza Doctors Hospital v. UHP Healthcare, supra,* 105 Cal.App.4th at p. 700; see also *Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 793 [9 Cal.Rptr.3d 734].)

■ Under the Knox-Keene Act, a health care service plan is: "(1) Any person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost for those services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees." (§ 1345, subd. (f)(1).)[1]

■ The Knox-Keene Act provides that, in order to offer a health care service plan, the plan must apply for a license to do so by filing an application for licensure in a form prescribed by the Department. (§§ 1349, 1351.) The application must include: (1) "A copy of the forms of evidence of coverage and of the disclosure forms or material which are to be issued to subscribers or enrollees of the plan" (§ 1351, subd. (f)), and (2) "A copy of

---

[1] Under the Knox-Keene Act, "person" is broadly defined to include individuals, organizations, partnerships, corporations, and other entities. (§ 1345, subd. (j).)

the form of the individual contract which is to be issued to individual subscribers and the form of group contract which is to be issued to any employers, unions, trustees, or other organizations." (§ 1351, subd. (g).)

Any new or modified plan contract[2] must be submitted to the Department before it is distributed or published. (§ 1352.1, subd. (a).) Unless it disapproves a submitted plan, the director of the Department must notify the health care service plan that the Department "has not found the plan contract, disclosure form, or evidence of coverage, wholly or in part, to be untrue, misleading, deceptive, or *otherwise not in compliance with this chapter or the rules thereunder*, and specified the deficiencies, within at least 30 days or any shorter time as the director by rule or order may allow." (*Ibid.*, italics added.)

■ A health care service plan that has been continuously licensed for the preceding 18 months and has had group contracts in effect at all times during that period may issue a new or modified contract without prior approval by the director if the contract and any related disclosure forms and evidence of coverage are filed with the director not later than 10 business days after entering the contract. (§ 1352.1, subd. (b).) The statute authorizes the director to require a plan which previously has violated the chapter to obtain approval prior to entering into group contracts. (§ 1352.1, subd. (c).) The director must issue a license upon determining "that the applicant has satisfied the provisions of this chapter . . . ." (§ 1353.)

Thus, under this statutory scheme, the Department reviews what it describes as a "template form" of plan contracts in conjunction with the plan's application for licensure to ensure compliance with the Knox-Keene Act. It is the Department's practice not to review contracts after they are negotiated between the health care service plans and employers who are negotiating for health care insurance on behalf of their employees because it already has reviewed the template form of contract for statutory compliance.

With these fundamental licensing provisions of the Knox-Keene Act in mind, we turn to the contentions of the parties.

## III

■ Defendants contend that plaintiffs cannot show an actual controversy to support their action for declaratory relief. " 'The fundamental basis of declaratory relief is the existence of an *actual, present controversy* over a

---

[2] "Plan contract" is defined in the Knox-Keene Act as "a contract between a plan and its subscribers or enrollees or a person contracting on their behalf pursuant to which health care services, including basic health care services, are furnished; and . . . unless the context otherwise indicates it includes group contracts." (§ 1345, subd. (r).)

proper subject.' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 [124 Cal.Rptr.2d 519, 52 P.3d 695], quoting 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 817, p. 273.) " 'An action for declaratory relief lies when the parties are in fundamental disagreement over the construction of particular legislation, or they dispute whether a public entity has engaged in conduct or established policies in violation of applicable law.' " (*Ibid.*, quoting *Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1723 [45 Cal.Rptr.2d 752].) Because plaintiffs challenge the Department's approval of health service plans under the Knox-Keene Act, we conclude there is an actual controversy proper for resolution through an action for declaratory relief.

## IV

■ "In California, health care service plans (or HMO's) are licensed and regulated by the Department of Managed Care under the Knox-Keene Act." (*Smith v. PacifiCare Behavioral Health of Cal., Inc.* (2001) 93 Cal.App.4th 139, 150 [113 Cal.Rptr.2d 140].) Plaintiffs' theory is that the Legislature's grant of powers to the Department to regulate health care service plans requires the Department to disapprove any plan which requires that disputes be resolved by binding arbitration. Their reasoning runs: (1) sections 1341.9 and 1352.1 of the Knox-Keene Act[3] grant the defendants all powers and duties relating to health care service plans, including the power to approve plan contracts; (2) under section 1352.1, plans with "untrue, misleading, deceptive" language or other language that does not comply with the act may not be approved; (3) the Department therefore may not approve a plan that contains an unconstitutional provision; (4) plaintiffs have a constitutional right to jury trial; (5) health care service plans between an employer and an insurer containing a mandatory binding arbitration clause effect an unconstitutional waiver of the employees' right to jury trial; (6) therefore, the Department should require that plans offer a choice of jury trial or mandatory binding arbitration; and (7) the Department's approval of the plans the plaintiffs were offered was improper and subject to challenge by the plaintiffs.

---

[3] Plaintiffs also invoke Insurance Code section 10291. But, " '[h]ealth care service plans under the Knox-Keene Act are generally subject to the jurisdiction of the Commissioner of Corporations (§ 1341) [now Director of the Department of Managed Health Care], *not* the Insurance Commissioner. Thus, Insurance Code section 740, subdivision (g), exempts health care service plans from Department of Insurance jurisdiction (though the Commissioner of Corporations is to consult with the Insurance Commissioner to ensure consistency of regulations to the extent practicable under section 1342.5). Regulations concerning health care service plans are found in title 10 of the California Code of Regulations, section 1300.43 et seq.' (*Williams v. California Physicians' Service* (1999) 72 Cal.App.4th 722, 729 [85 Cal.Rptr.2d 497], fn. omitted.)" (*Smith v. PacifiCare Behavioral Health of Cal., Inc., supra,* 93 Cal.App.4th at p. 150, fn. 13.)

Plaintiffs' approach is somewhat similar to the reasoning followed in the landmark case of *Shelley v. Kraemer* (1948) 334 U.S. 1 [92 L.Ed. 1161, 68 S.Ct. 836], which is not cited. In that case, the United States Supreme Court held that the action of state courts and judicial officers in enforcing private restrictive racial covenants constituted state action within the meaning of the Fourteenth Amendment to the United States Constitution. (*Shelley v. Kraemer*, at pp. 18–19.) The court reiterated that " 'The federal guaranty of due process extends to state action through its judicial as well as through its legislative, executive, or administrative branch of government' " (*id.* at p. 15, quoting *Twining v. New Jersey* (1908) 211 U.S. 78, 90–91 [53 L.Ed. 97, 29 S.Ct. 14]), so that "when the effect of that action is to deny rights subject to the protection of the Fourteenth Amendment, it is the obligation of this Court to enforce the constitutional commands." (*Id.* at p. 20.)

■ Plaintiffs repeatedly assert that a "constitutional right to choose" between arbitration and jury trial lies at the heart of their complaint. We find no authority in the federal or state Constitution to support this claim in the context of a group plan offered by an employer. "[T]he strictures of due process apply only to the threatened deprivation of liberty and property interests deserving the protection of the federal and state Constitutions." (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1059 [114 Cal. Rptr. 2d 798].) While plaintiffs invoke both the federal and state constitutional right to jury trial, the 7th Amendment to the United States Constitution does not apply to this state court issue. (*De Guere v. Universal City Studios, Inc.* (1997) 56 Cal.App.4th 482, 506 [65 Cal.Rptr.2d 438].) Instead, we apply California Constitution, article I, section 16, which guarantees the right to jury trial.

■ In *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944 [32 Cal.Rptr.3d 5, 116 P.3d 479] our Supreme Court reiterated the power of the Legislature to prescribe methods for waiver of the right to civil jury trial, for example by predispute arbitration agreements. (*Id.* at p. 955, citing Code Civ. Proc., § 1281.) The *Grafton* court observed: " '[I]t has always been understood without question that parties could eschew jury trial either by settling the underlying controversy, or by agreeing to a method of resolving that controversy, such as arbitration, *which does not invoke a judicial forum.*' " (*Id.* at p. 957, quoting *Madden, supra*, 17 Cal.3d at p. 713.) The Supreme Court cited Code of Civil Procedure section 1281, a principal arbitration statute, in concluding that "when the Legislature has authorized waiver of the right to trial in a court of law prior to the emergence of a dispute, it has done so explicitly." (*Grafton*, at p. 960.)

■ The fundamental problem with plaintiffs' theory is that the Legislature has expressly approved arbitration as a forum for resolution of disputes

under health care service contracts, thus authorizing waiver of jury trial for such disputes. In 1994, the Legislature added section 1363.1 to the Knox-Keene Act,[4] which specifically provides: "Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions . . . ." The statute goes on to specify that the disclosure: must clearly state that binding arbitration is required, and that it applies to medical malpractice claims; must be a separate article in the agreement issued to the employer or subscriber; must be "prominently displayed" on the enrollment form signed by the subscriber; must clearly state whether the subscriber is waiving the right to jury trial for medical malpractice or other disputes, or both; shall be "substantially expressed" in language of Code of Civil Procedure section 1295; and must be placed immediately before the signature line provided for the representative contracting with the health care service plan and for the individual enrolling in the plan.

██ "It is a fundamental rule of statutory construction that '[t]he Legislature . . . is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof.' (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].)" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1096 [6 Cal.Rptr.3d 457, 79 P.3d 569].) Applying this principle, we conclude that the Legislature was aware of the Supreme Court's 1988 holding in *Madden, supra,* 17 Cal.3d 699, when section 1363.1 was enacted in 1994. ██ In *Madden,* the Supreme Court concluded that an employer, acting as agent of its employees, has implied authority to agree to binding arbitration of malpractice claims arising under a health services plan it negotiates as part of an employee benefit package. (*Madden, supra,* 17 Cal.3d at pp. 706, 709.)

---

[4] In full, section 1363.1 provides: "Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions: [¶] (a) The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice. [¶] (b) The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee. [¶] (c) The disclosure shall clearly state whether the subscriber or enrollee is waiving his or her right to a jury trial for medical malpractice, other disputes relating to the delivery of service under the plan, or both, and shall be substantially expressed in the wording provided in subdivision (a) of Section 1295 of the Code of Civil Procedure. [¶] (d) In any contract or enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed immediately before the signature line provided for the representative of the group contracting with a health care service plan and immediately before the signature line provided for the individual enrolling in the health care service plan."

██ Rather than abrogating the *Madden* decision by requiring an individual waiver of right to jury trial by a person enrolling in a health care service plan requiring binding arbitration, the Legislature extended to enrollees the more limited protection of disclosure. We agree with the trial court that the enactment of section 1363.1 evinces a legislative intent to allow binding arbitration in health care service plans negotiated by employers acting as agents of their employees. Because a health care service contract may contain an arbitration clause so long as it complies with the disclosure requirements of section 1363.1, an employer is empowered under *Madden* to negotiate a waiver of jury trial on behalf of its employees by negotiating a contract including such a clause with a health care service plan.

██ Plaintiffs assert that section 1363.1 means only that the health care service plan may include arbitration as an alternative forum to be selected by each individual enrollee. While the Legislature could have written the Knox-Keene Act in that fashion, it did not. The plain language of the statute allows the Department to approve plans which require arbitration of disputes and plans that do not. No one suggests that the Department would not approve a plan under which arbitration was elective, or a plan that did not provide for arbitration at all, if such a plan were presented. Plaintiffs cite no authority authorizing the Department to insist on a forum provision in plan contracts. The Department takes the position that it has none. It argues: "It is well settled in California that administrative agencies have only the powers conferred on them by their controlling statute or the Constitution. The Department must regulate Plans in a manner consistent with its controlling statute, the Knox-Keene Act. Because the Knox-Keene Act approves arbitration clauses, the Department cannot mandate a contractual choice between arbitration and trial by jury. To do so would ignore the Legislature's decision that Plans can contract for arbitration as a forum for dispute resolution."

██ We agree with the Department's view that it lacks authority to mandate a choice of forum. "[I]t is well settled that administrative agencies have only the powers conferred on them, either expressly or by implication, by Constitution or statute. (*Ferdig* v. *State Personnel Bd.* (1969) 71 Cal.2d 96, 103 [77 Cal.Rptr. 224, 453 P.2d 728].) An administrative agency must act within the powers conferred upon it by law and may not act in excess of those powers. (*Id.* at p. 104.) Actions exceeding those powers are void, and administrative mandate will lie to nullify the void acts. (*Aylward* v. *State Board etc. Examiners* (1948) 31 Cal.2d 833, 839 [192 P.2d 929].)" (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1042 [56 Cal.Rptr.2d 109, 920 P.2d 1314].) The Department was created and empowered by the Knox-Keene Act, and therefore, has only the power delegated to it in the act. (*Kaiser Foundation Health Plan, Inc. v. Zingale* (2002) 99 Cal.App.4th 1018, 1024 [121 Cal.Rptr.2d 741].)

Plaintiffs assert the Department "had the power and authority to compel all health care plans to draft contracts which offered citizens a choice of a dispute resolution forum. Enabling statutes are not required for the courts to determine whether governmental action, including administrative agency action, is constitutional." This argument is based in part on the Knox-Keene Act's grant of powers to the director of the Department. (§§ 1341.9, 1342.5.) It runs contrary to the principle that the Department has only the powers delegated to it by the Legislature in enacting the Knox-Keene Act. Moreover, as we have discussed, while there is a California constitutional right to civil jury trial, the Legislature has approved the use of arbitration as a forum for resolution of disputes under health care service contracts, and as recognized in *Madden, supra,* 17 Cal.3d 699, an employer is authorized to negotiate such a contract on behalf of its employees.

Plaintiffs cite cases in which courts have refused to compel arbitration of disputes arising from health care service plans where the arbitration clause did not comply with section 1363.1. (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44 [16 Cal.Rptr.3d 687]; *Smith v. PacifiCare Behavioral Health of Cal., Inc., supra,* 93 Cal.App.4th 139; *Imbler v. Pacificare of Cal., Inc.* (2002) 103 Cal.App.4th 567 [126 Cal.Rptr.2d 715]; *Pagarigan v. Superior Court* (2002) 102 Cal.App.4th 1121 [126 Cal.Rptr.2d 124].) From this, they contend that the Department has failed in its duty to disapprove any health care service plan that does not comply with the Knox-Keene Act. But the complaint does not allege that the arbitration clauses at issue here fail to comply with the specific disclosure requirements of section 1363.1.

Plaintiffs invoke principles applicable to the construction of adhesion contracts in arguing they did not knowingly or voluntarily waive their right to jury trial. They assert that "the people's reserved sovereign right to be offered choice in contracts of adhesion is greater than the power of the executive body, [the Department]." Based on this reasoning, they ask us to compel the Department to reject health care service contracts that do not provide a choice of forum. But, as we have seen, the Legislature may authorize the waiver of right to civil jury trial in this setting, and has done so by enactment of the Knox-Keene Act. In addition, the Supreme Court rejected a similar argument in *Madden.* The court noted that the plaintiff could have selected from plans offered by the Board of Administration of the State Employees Retirement System that did not contain mandatory arbitration clauses. (*Madden, supra,* 17 Cal.3d at p. 711.) It also noted that plaintiff had the option of contracting individually for medical care. (*Ibid.*) The Supreme Court concluded that the principles barring enforcement of adhesion contracts "do not bar enforcement of terms of a negotiated contract which neither limit the liability of the stronger party nor bear oppressively upon the weaker." (*Id.* at p. 712.) Accordingly, the Supreme Court rejected the

argument that adhesion principles prevented enforcement of the arbitration clause against Madden. (*Ibid.*)

The complaint before us provides no details of the health service plans at issue, other than the existence of mandatory binding arbitration clauses in each. The allegations of unconscionability focus on these arbitration clauses alone. Under *Madden,* we are bound to conclude that arbitration clauses are not barred.

Plaintiffs argue the trial court misapplied the holding in *Madden* because the issue here—the lack of a contract without a binding arbitration provision—was not discussed in *Madden.* But *Madden* decided that an employer is authorized to negotiate a health care plan that imposes binding arbitration on any employee who enrolls in it. The Supreme Court stated that in this circumstance, the employee has only the choice presented to the plaintiffs here: enroll in the plan and give up a right to jury trial, or decline to enroll and forgo coverage under the plan.[5]

█ Plaintiffs also attempt to distinguish *Madden,* because this lawsuit is not an action against the insurers, plaintiffs are not attempting to have arbitration clauses declared unconstitutional, and agents for the Viola plaintiffs unsuccessfully attempted to negotiate a contract without an arbitration clause. These arguments do not distinguish the essential holding of *Madden.* The significance of *Madden* to this case is that the Knox-Keene Act authorizes waiver of jury trial, and *Madden* authorizes an employer to negotiate a health care contract waiving jury trial on behalf of its employees. Plaintiffs claim they are unable to obtain alternative insurance that does not include a binding arbitration clause. Assuming that is so, it does not compel a different result in this case. The Legislature has authorized health care service plans that include binding arbitration provisions, so long as the plan complies with the disclosure requirements of section 1363.1.

We conclude that plaintiffs failed to state a cause of action against defendants because they cannot show defendants violated either constitutional or statutory law by approving health care service plans which contain binding arbitration clauses.

---

[5] By letter brief, plaintiffs cite *Wisden v. Superior Court* (2004) 124 Cal.App.4th 750 [21 Cal.Rptr.3d 523] for the proposition that the Legislature cannot constitutionally dispense with a right to jury trial. The case is inapposite because it did not deal with waiver of right to jury trial by binding arbitration, but with the availability of jury trial for a cause of action under the Uniform Fraudulent Transfer Act.

## DISPOSITION

The order of dismissal is affirmed.

Curry, J., and Grimes, J.,[*] concurred.

A petition for a rehearing was denied November 4, 2005, and on November 4, 2005, and November 9, 2005, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied January 4, 2006, S139021.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.